## PINNEY *v.* NELSON.

ERROR TO THE SUPERIOR COURT OF THE COUNTY OF LOS ANGELES,
CALIFORNIA.

No. 65. Submitted April 26, 1901.—Decided December 2, 1901.

When a corporation is formed in one State, and by the express terms of its
charter it is created for doing business in another State, and business is
done in that State, it must be assumed that the charter contract was made
with reference to its laws; and the liability which those laws impose will
attend the transaction of such business.

THIS was an action to enforce a personal liability of stock-
holders. It was commenced in a justice's court of Los Angeles
city, Los Angeles County, California, on September 30, 1898, by
the defendant in error against the plaintiffs in error. It was
subsequently transferred to the superior court of the county,
where a trial was had on January 17, 1900, before the court
without a jury. A stipulation was signed as to the truth of
various averments in the complaint and answer, which con-
cluded as follows:

" And it is stipulated that the only question in this case is as
to whether section 322 of the Civil Code of California is in viola-
tion of the provisions of the Constitution of the United States,
and if it is in violation of such provisions defendants are entitled
to judgment, but if said section is not in violation of said pro-
visions, then plaintiff is entitled to judgment as prayed for in
his complaint."

Findings of fact were also made, among which were the fol-
lowing:

"II. That the Los Angeles Iron and Steel Company was a corporation organized on the 8th day of March, 1893, and incorporated under the laws of the State of Colorado; that the seventh provision of its articles of incorporation is as follows, to wit: The said company is created for the purpose of carrying on part of its business beyond the limits of the State of Colorado, and the principal office of said company in the State shall be kept at the city of Denver, Arapahoe County, and the principal plant and principal operations of said company beyond the limits of the State shall be in Los Angeles County, State of California, and such other places in the State of California as may be decided upon by the board of directors. The principal business of said company in the State of Colorado shall be carried on in Arapahoe County.

"III. That the defendants are and were at all times herein mentioned residents and citizens of the State of California.

"IV. That all the indebtedness of said Los Angeles Iron and Steel Company to plaintiff and to plaintiff's assignors was created by contracts made, executed and to be performed in the State of California."

"VI. That at the time the said indebtedness was created and incurred by the said company there were issued of the capital stock thereof the number of 1311 shares, and that the defendants were at said times the owners respectively of the number of said shares as set opposite their respective names, as follows, to wit: H. L. Pinney, 50 shares; C. L. Pinney, 42 shares; W. C. Patterson, 35 shares; C. W. Damerel, 91 shares; F. E. Little, 22 shares; Thomas Brooks, 38 shares."

Upon the stipulation and findings a judgment was rendered in favor of the plaintiff. A writ of error was subsequently sued out from this to that court, it being the highest court in the State to which the action could be taken.

Article 12, section 15, of the constitution of California, adopted in 1879, reads:

"No corporation organized outside the limits of this State shall be allowed to transact business within this State on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this State."

Section 322 of the Civil Code of California, as amended March 15, 1876, provides as follows :

"Each stockholder of a corporation is individually and personally liable for such proportion of its debts and liabilities as the amount of stock or shares owned by him bears to the whole of the subscribed capital stock or shares of the corporation, and for a like proportion only of each debt or claim against the corporation. Any creditor of the corporation may institute joint or several actions against any of its stockholders, for the proportion of his claim payable by each, and in such action the court must ascertain the proportion of the claim or debt for which each defendant is liable, and a several judgment must be rendered against each, in conformity therewith.

"The liability of each stockholder of a corporation, formed under the laws of any other State or Territory of the United States, or of any foreign country, and doing business within this State, shall be the same as the liability of a stockholder of a corporation created under the constitution and laws of this State."

By the stipulation above referred to the truthfulness of the following averment in the answer was admitted :

"Defendants allege that there is no statute of the State of Colorado providing that stockholders shall be liable for any portion of the indebtedness of a corporation, and allege that under the laws of the State of Colorado a stockholder in a corporation is not liable for any portion of the indebtedness of said corporation."

*Mr. M. L. Graff* and *Mr. J. W. McKinley* for plaintiffs in error.

*Mr. W. S. Taylor, Mr. Edward W. Forgy* and *Mr. J. A. Anderson* for defendant in error.

Mr. Justice Brewer delivered the opinion of the court.

The plaintiffs in error rely upon the proposition that the liability of a stockholder is determined by the charter of the cor-

poration and the laws of the State in which the incorporation is had. "If the constitution to which a corporator has agreed does *not* provide for individual liability to creditors, he cannot be charged with individual liability anywhere. (Morawetz on Corporations, 2d ed. sec. 874.)" They invoke the *lex loci contractus*, and say that the stockholders' contract was made in Colorado, that being the State in which the Los Angeles Iron and Steel Company was incorporated; that by the laws of that State there is no personal liability of stockholders; that it is not within the power of California to change the terms of that contract, the Federal Constitution (Art. I, sec. 10) forbidding a State to pass a law impairing the obligation of contracts; that while California, which prescribes an individual liability of stockholders, may if it sees fit exclude every corporation of another State whose stockholders do not assent to such liability, yet if it fails to do so, and such Colorado corporation actually comes into California to transact business, such coming into the State and the transaction of business therein do not change the terms of the stockholders' contracts, or impose a personal liability; and also that in such a case an attempt to enforce the statutory provisions of California so far as to change the personal liability of corporators in the foreign corporation, is in conflict with the due process and equal protection clauses of the first section of the Fourteenth Amendment.

With reference to the contention that the law of California impairs the obligation of the contract of the stockholders, it is enough to say that that law, both constitutional and statutory, was enacted long before the incorporation of the Los Angeles Iron and Steel Company, and that therefore section 10 of Article I of the Federal Constitution has no application. "It is equally clear that the law of the State to which the Constitution refers in that clause must be one enacted after the making of the contract, the obligation of which is claimed to be impaired." *Lehigh Water Co.* v. *Easton,* 121 U. S. 388, 391. See also *Central Land Co.* v. *Laidley,* 159 U. S. 103, 111; *McCullough* v. *Virginia,* 172 U. S. 102, 116.

Passing to a consideration of the stockholders' contract in the light of the other contention, it may be said that ordinarily

it is controlled by the law of the State in which the incorporation is had. That is the place of contract, and, generally, the law of the place where a contract is made governs its nature, interpretation and obligation. While this is so, it is also true that parties in making a contract may have in view some other law than that of the place, and when that is so that other law will control. That the parties have some other law in view and contract with reference to it is shown by an express declaration to that effect. In the absence of such declaration it may be disclosed by the terms of the contract and the purpose with which it is entered into. In *Pritchard* v. *Norton*, 106 U. S. 124, many cases were cited by Mr. Justice Matthews, delivering the opinion of the court, in which these propositions were illustrated and enforced, and on page 136 it was said :

" The law we are in search of, which is to decide upon the nature, interpretation and validity of the engagement in question, is that which the parties have, either expressly or presumptively, incorporated into their contract as constituting its obligation. It has never been better described than it was incidentally by Mr. Chief Justice Marshall, in *Wayman* v. *Southard*, 10 Wheat. 1, 48, where he defined it as a principle of universal law, ' The principle that in every forum a contract is governed by the law with a view to which it was made.' The same idea had been expressed by Lord Mansfield in *Robinson* v. *Bland*, 2 Burr. 1077, 1078, ' the law of the place,' he said, ' can never be the rule where the transaction is entered into with *an express* view to the law of another country, as the rule by which it is to be governed.' And in *Lloyd* v. *Guibert*, Law Rep. 1 Q. B. 115, 120, in the Court of Exchequer Chamber, it was said that ' it is necessary to consider by what general law the parties intended that the transaction should be governed, or rather, by what general law it is just to presume that they have submitted themselves in the matter.' *Le Breton* v. *Miles*, 8 Paige [N. Y. ], 261."

The subject was also discussed at length by Mr. Justice Gray in *Liverpool Steam Company* v. *Phenix Insurance Company*, 129 U. S. 397. In *Coghlan* v. *South Carolina Railroad Company*, 142 U. S. 101, 110, Mr. Justice Harlan, referring to these two opinions, observed : " The elaborate and careful re-

view of the adjudged cases, American and English, in the two cases last cited, leaves nothing to be said upon the general subject."

In *Bank of Augusta* v. *Earle*, 13 Pet. 519, 588, Chief Justice Taney said:

"It is very true that a corporation can have no legal existence out of the boundaries of the sovereignty by which it is created. . . . But although it must live and have its being in that State only, yet it does not by any means follow that its existence there will not be recognized in other places; and its residence in one State creates no insuperable objection to its power of contracting in another. It is indeed a mere artificial being, invisible and intangible, yet it is a person for certain purposes in contemplation of law, and has been recognized as such by the decisions of this court. It was so held in the case of *The United States* v. *Amedy*, 11 Wheat. 412, and in *Beaston* v. *The Farmers' Bank of Delaware*, 12 Pet. 135. Now natural persons, through the intervention of agents, are continually making contracts in countries in which they do not reside, and where they are not personally present when the contract is made, and nobody has ever doubted the validity of these agreements. And what greater objection can there be to the capacity of an artificial person, by its agents, to make a contract within the scope of its limited powers, in a sovereignty in which it does not reside, provided such contracts are permitted to be made by them by the laws of the place?"

And then, after discussing the question of comity, added (p. 589):

"Adopting, as we do, the principle here stated, we proceed to inquire whether, by the comity of nations, foreign corporations are permitted to make contracts within their jurisdiction, and we can perceive no sufficient reason for excluding them when they are not contrary to the known policy of the State, or injurious to its interests.

"It is nothing more than the admission of the existence of an artificial person created by the law of another State, and clothed with the power of making certain contracts. It is but the usual comity of recognizing the law of another State."

As then a corporation can have no legal existence outside of the State in which it is incorporated, the contract of the stockholders with one another, by which the corporation is created, is presumed to have been made with reference to the laws of that State, nothing being said in the charter to the contrary. But as comity permits a corporation to enter another State and do business therein, it is competent for the stockholders in making their charter to contract with reference to the laws of a State in which they propose the corporation shall do business. And in this case the stockholders in their charter specified that the purpose of the incorporation was partly business beyond the limits of Colorado, and that the principal part of such outside business should be carried on in California. Not content to rely upon the general authority which by the rules of comity the Colorado corporation would have to enter California, and transact business therein, they in terms set forth that a part of the purpose of the incorporation was the transaction of business by the corporation in California. Now when they in terms specified that they were framing a corporation for the purpose of having that corporation do business in California is it not clear that they were contracting with reference to the laws of that State? Contracting with reference to the laws of that State they must be assumed to know the provisions of those laws; that by them a personal liability was cast upon the stockholders in corporations formed under the laws of the State; and that that same liability was also imposed upon the stockholders of corporations formed under the laws of other States and doing business within California. How can it be said that those laws do not enter into the contract and control as to all business done in pursuance of that contract within the limits of California? Suppose these same stockholders in Colorado had formed a partnership with the expressed intent of carrying on business in California, would not that expressed intent be a clear reference to the laws of California and an incorporation of those laws into the liabilities created by the partnership business in California? And if this rule obtains as to contracts of partners between themselves, why not also as to contracts of stockholders between themselves in forming a corporation?

In this case it appears that the business transactions out of which these liabilities arose were carried on in California. They resulted from business done in California by virtue of an express contract made by the stockholders with reference to such business. It is unnecessary to express an opinion upon the question whether any personal liability would be assumed by the stockholders in reference to business transacted in Colorado. Parties may contract with special reference to carrying on business in separate States, and when they make an express contract therefor the business transacted in each of the States will be affected by the laws of those States, and may result in a difference of liability. Neither is it necessary to express any opinion upon the question whether the defendants could have been held liable under the California statutes, independently of the provisions of the Colorado charter. All that we here hold is that when a corporation is formed in one State, and by the express terms of its charter it is created for doing business in another State, and business is done in that State, it must be assumed that the charter contract was made with reference to its laws; and the liabilities which those laws impose will attend the transaction of such business.

The judgment of the Superior Court is

*Affirmed.*