## AMERICAN SURETY CO. OF NEW YORK v. MORAN.

### No. 6231.

United States Court of Appeals for the District of Columbia.

Argued Nov. 9, 1934.

Decided Jan. 7, 1935.

Chas. A. Douglas and Jo. V. Morgan, both of Washington, D. C., for appellant.

J. Bruce Kremer, George B. Springston, and Herbert M. Bingham, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

This is an appeal from a judgment for the plaintiff entered by the lower court upon the pleadings in an action to recover upon a contract of insurance.

In the declaration filed in the lower court the plaintiff, John F. Moran, alleged that he was the duly appointed and qualified receiver of the Park Savings Bank, a corporation located in the city of Washington, D. C., under appointment of the Comptroller of the Currency, and that he brought this suit as such receiver. He alleged that on June 15, 1931, the defendant, American Surety Company of New York, executed and delivered to the Park Savings Bank a certain indemnifying bond entitled a "Bankers' Blanket Bond," whereby defendant agreed to indemnify the bank against direct loss not exceeding $50,000, suffered by the bank through dishonest acts committed by any of the officers or employees of the bank during the term of such insurance; that the annual premiums required for the bond were duly paid to defendant by the bank; that the bank afterwards suffered direct losses in excess of $50,000 through dishonest acts within the meaning and terms of the bond, committed by one of its salaried officers and employees; that notice of the loss was duly furnished defendant and demand made upon it for payment; but that defendant denied liability upon the bond and refused to pay any part thereof, wherefore the plaintiff prayed judgment. The plaintiff also filed an affidavit of merit, setting out various defalcations by Robert S. Stunz, an officer and employee of the bank, upon which plaintiff based his claim.

The defendant, the American Surety Company of New York, filed a plea wherein it admitted the execution and delivery of the indemnifying bond as alleged in the declaration, and admitted that, while the bond was in force and effect, the Park Savings Bank suffered direct losses in a sum exceeding $50,000 in amount, through the dishonest acts of one of its salaried officers and employees, and that defendant had been duly notified thereof; but it denied that such losses were covered by the bond and denied liability in any amount for the losses suffered by the bank, for the following reasons, to wit:

"That the aforesaid Park Savings Bank was duly organized under the laws of the State of Alabama on August 30, 1909; that immediately thereafter said bank began a general banking business in the city of

Washington, District of Columbia; that the Constitution of the State of Alabama, section 251 thereof, then and during the effective period of said bond in force, provides as follows:

" 'Every bank or banking company shall be required to cease all banking operations within twenty years from the time of its organization, unless the time be extended by law, and promptly thereafter close its business; but after it has closed its business it shall have corporate capacity to sue and shall be liable to suits until its affairs and liabilities are fully closed.'

"That section 3516 of the Civil Code of Laws of the State of Alabama then, and during the effective period of said bond, in force, provides as follows:

" '*Exist for five years after dissolution by limitation or forfeiture for certain purposes.*—Corporations whose charters expire by limitation and which are dissolved by forfeiture or by any other cause, except by judicial decree, exist as bodies corporate for the term of five years after such dissolution, for the purpose of prosecuting or defending suits, settling their business, disposing of their property, and dividing their capital stock, but not for the purpose of continuing their business; and the directors shall be trustees thereof with full power to settle their affairs, collect their debts, sell and convey the property, and divide the moneys and other property among the stockholders, after paying its debts; and may act under the bylaws of the corporation, prescribe the terms and conditions of the sales of the property of the corporation, sue for and recover the debts and property of the dissolved corporation, in the corporate name; and are jointly and severally liable to its creditors and stockholders to the extent of the property which may come into their hands. On application to the chancellor or judge or other court at the principal place of business of the corporation, such trustees may be continued for such length of time beyond such five years as may be necessary for the purpose of this section set forth.'

"That no extension of the power granted the Park Savings Bank to operate and conduct a banking business was applied for by said bank or granted by the State of Alabama, although the said bank had immediately prior to August 30, 1929, been notified that on that day the power theretofore granted to do a general banking business would cease and expire unless renewed before said date; that notwithstanding the provisions of the constitution and code of laws of the State of Alabama, Park Savings Bank did not cease all banking operations, but attempted to exercise that power granted by its charter for the operation and conduct of a general banking business, and it continued its general banking business until March 3, 1933; and that all of the aforesaid dishonest acts of Robert S. Stunz were committed by him in connection with and in the progress and conduct by the said bank of a general banking business, with the knowledge and consent of its stockholders, officers, and directors; and none of said dishonest acts was committed in or in connection with the exercise by said bank of the powers lawfully reserved and remaining to it under the constitution and laws of the State of Alabama."

A demurrer was filed by the plaintiff to the plea, alleging it to be bad in substance, and plaintiff prayed judgment. The court sustained the demurrer and entered judgment against the defendant in the sum of $50,000, being the amount of plaintiff's claim. Whereupon the present appeal was taken.

It is contended by the defendant (1) that neither the Park Savings Bank, nor its directors, nor any one in its behalf, could have lawfully carried on the banking business in the District of Columbia after August 30, 1929; (2) that the defendant below, now the appellant, is not estopped to set up the defense raised by the plea, namely, that no one can validly insure himself against loss resulting from the doing of an unlawful act; (3) that defendant entered into the contract of fidelity insurance with the Park Savings Bank in the light of the laws of the state of Alabama and not in the light of its possible knowledge of the nature of the business transacted by the bank; (4) and that the Park Savings Bank could not lawfully enter into a contract of insurance to insure itself against loss sustained by it in the operation of a banking business, and such contract gives no right of recovery to a receiver of that bank. It is furthermore claimed by defendant that the receiver of the Park Savings Bank is not the proper party plaintiff in this case.

■ We are of the opinion, however, that the defendant is estopped from setting up the defense upon which it relies in this case. It appears that on June 15, 1931, when the indemnifying bond was executed, the defendant was charged by law with a knowl-

648

edge of the terms and limitations of the bank's charter, and that defendant actually knew that the bank was not engaged in the liquidation of its affairs, but was continuing to engage in a general banking business. This fact appears from the character of the indemnifying bond which the defendant issued to the bank. It is called a "Banker's Blanket Bond," and its terms are such as apply to a bank engaged in a general banking business, but which would be inapt if used in connection with the mere liquidation of a bank. With these facts known to it, the defendant for a stipulated premium issued the indemnifying bond in question and continued it in operation until March 4, 1933, the date of the bank moratorium. During the period which intervened between June 15, 1931, and March 4, 1933, the bank paid, and defendant received, the stipulated premiums required to continue the bond in force and effect. It does not appear that any action or proceeding was brought on behalf of the state of Alabama or of the District of Columbia during this period for the purpose of forfeiting the bank's charter, or of enjoining the bank from continuing the banking business, nor that the statutes of Alabama or of the District of Columbia impose any penalty for such proceedings as the bank pursued, nor that they denounce the contracts made by the bank under such circumstances as null and void. It is apparent that the indemnity contract was not part of the banking business carried on by the bank during the time in question, but bore only a collateral relation thereto. Nevertheless it is obvious that defendant, when it issued the bond, understood and intended that its obligation should extend to such a business. The sole defense presented by the plea, therefore, is that the bank was acting ultra vires when continuing its banking business, and that the indemnity contract incident to such business was likewise ultra vires and void, and that the defendant, having received and retained the benefits accruing to it under its bond, may now refuse to discharge the obligations thereby assumed by it. This contention cannot be sustained.

It has been held by competent authority in many cases that, where the act of ultra vires in a contract entered into by a corporation is simply a question of authority to contract, a party who has had the benefit of the agreement will not be permitted in an action founded upon it to question its validity. It has been held that the lawful proceeding in case of actions ultra vires by a corporation is a suit by the sovereign which granted the charter of the corporation.

In 7 R. C. L. p. 676, § 678, it is said in relation to the defense of ultra vires: "However, the defense is looked upon by many courts with disfavor whenever it is presented for the purpose of avoiding an obligation which a corporation has assumed merely in excess of the powers conferred upon it, and not in violation of some express prohibition of the statute; and, in the modern cases especially, the rule has been frequently announced that the plea of ultra vires should not be allowed to prevail, whether interposed for or against a corporation, when it will not advance justice, but, on the contrary, will accomplish a legal wrong."

In Washington Gas Light Co. v. Dann, 63 App. D. C. 142, 70 F.(2d) 746, it appeared that a gas company engaged an engineer at an agreed consideration to make a survey of another utility corporation and negotiate purchase of its stock and bonds. This court held that the company was not entitled to defeat liability for the agreed compensation of the engineer on the ground that the purchase of such stock and bonds was ultra vires.

In Sedgwick (Stat. and Const. Constr. 73) it is said: "Where it is a simple question of authority to contract, arising either on a question of regularity of organization or of power conferred by the charter, a party who has had the benefit of the agreement cannot be permitted in an action founded upon it to question its validity. It would be in the highest degree inequitable and unjust to permit a defendant to repudiate a contract, the benefit of which he retains."

In Union Gold-Mining Co. v. National Bank, 96 U. S. 640, 642, 24 L. Ed. 648, the bank sued the mining company on an overdraft. The defendant interposed a plea that the bank had no right to loan the money, since the overdraft represented an excess loan in violation of section 5200 of the Revised Statutes of the United States (12 US CA § 84). In rejecting this contention, the court said: "We do not think that public policy requires or that Congress intended that an excess of loans beyond the proportion specified should enable the borrower to avoid the payment of the money actually received by him. This would be to injure the interests of creditors, stockholders, and all

who have an interest in the safety and prosperity of the bank."

In Ohio & M. Railway Co. v. McCarthy, 96 U. S. 258, 267, 24 L. Ed. 693, it was said by Mr. Justice Swayne in delivering the opinion of the court: "The doctrine of ultra vires, when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong."

In Union National Bank v. Matthews, 98 U. S. 621, 629, 25 L. Ed. 188, it appeared that A executed a promissory note to B, and, to secure the payment thereof, a deed of trust of lands which was in effect a mortgage with a power of sale thereto annexed. A national bank on the security of the note and deed loaned money to B, who thereupon assigned them to the bank. The note not having been paid at its maturity, the trustee was, pursuant to the power, proceeding to sell the lands, when A filed his bill to enjoin the sale, upon the ground that by sections 5136 and 5137 of the Revised Statutes (12 USCA §§ 24, 29), the deed did not inure as a security for a loan made by the bank at the time of the assignment of the note and deed. The statutes referred to are those prohibiting national banks from purchasing, holding, or making loans on real estate except for limited purposes not affecting this question. It was claimed that under these statutes the action of the bank was ultra vires; the court, however, overruled this contention, and held that the bank was entitled to enforce the collection of the note by a sale of the real estate. In the course of the opinion by Mr. Justice Swayne it is said: "We cannot believe it was meant that stockholders, and perhaps depositors and other creditors, should be punished and the borrower rewarded, by giving success to this defence whenever the offensive fact shall occur. The impending danger of a judgment of ouster and dissolution was, we think, the check, and none other contemplated by Congress.

"That has been always the punishment prescribed for the wanton violation of a charter, and it may be made to follow whenever the proper public authority shall see fit to invoke its application. A private person cannot, directly or indirectly, usurp this function of the government."

In Whitney v. Wyman, 101 U. S. 392, 25 L. Ed. 1050, it appeared that a corporation, organized pursuant to the provisions of the statute, but before its articles of association were filed with the county clerk, entered into a contract for certain machinery to enable it to carry on its business. It was held that the subsequent recognition of the validity of the contract, by the corporation, was binding upon it, although the statute declares that a corporation so organized shall not commence business before such articles are so filed.

In D. R. Wilder Manufacturing Co. v. Corn Products Co., 236 U. S. 165, 171, 35 S. Ct. 398, 400, 59 L. Ed. 520, Ann. Cas. 1916A, 118, suit was brought to recover the price of certain goods sold to the defendant, and the defense was that the plaintiff was an illegal combination under the Anti-Trust Act (15 USCA § 1 et seq.), and therefore was not competent to contract with the defendant. The court rejected this claim and spoke as follows: "Having dealt with the refining company as an existing concern possessing the capacity to sell, speaking generally, the assertion that it had no legal existence, because it was an unlawful combination in violation of the anti-trust act, was irrelevant to the question of the liability of the manufacturing company to pay for the goods, since such defense was a mere collateral attack on the organization of the corporation, which could not be lawfully made." See Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 S. Ct. 431, 46 L. Ed. 679; Steam Navigation Co. v. Weed, 17 Barb. (N. Y.) 378; Silver Lake Bank v. North, 4 Johns. Ch. (N. Y.) 370; Fritts v. Palmer, 132 U. S. 282, 10 S. Ct. 93, 33 L. Ed. 317; Campbell v. Perth Amboy Shipbuilding & Eng. Co., 70 N. J. Eq. 40, 62 A. 319.

The appellant has cited a number of authorities which are either cases dealing with contracts which are per se beyond the charter powers of the corporation or cases where the contract, while not itself illegal or wrongful, is unlawful because prohibited by the law of the state in which the corporation is attempting to carry on such business; whereas in this case the ultra vires act was not made unlawful by the statutes of the District of Columbia.

In respect to the contention of the appellant that the receiver was not the proper plaintiff, we may say that the subject is concluded for this court by our decision in Washington Loan & Trust Co., Trustee, v. W. B. Allman, Receiver, 70 F.(2d) 282, decided March 5, 1934.

Upon a review of the case, we are satisfied that the judgment of the lower court should be, and it is affirmed, with costs.