**HAMILTON v. OFFUTT et al.** *

No. 6436.

United States Court of Appeals for the District of Columbia.

Argued May 13, 1935.

Decided June 3, 1935.

HITZ, Associate Justice, dissenting.

———◇———

Angus W. McLean and Charles E. Wainwright, both of Washington, D. C., for appellant.

Charles V. Imlay and Ross H. Snyder, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This appeal involves the single question: Is a stockholder of the Potomac Savings Bank of Georgetown, D. C., an insolvent Virginia banking corporation, subject to double assessment under the District of Columbia laws?

The bank was incorporated in Virginia in 1903 "to conduct a savings bank in the city of Washington." It established a

*Writ of certiorari denied 56 S. Ct. 121, 80 L. Ed.——.

banking house in Washington and nowhere else. Its liabilities, contracts, debts, and engagements were incurred there, and its assets are located there.

It is agreed that neither the articles of incorporation, the by-laws, nor any provision of the Constitution, statutes, or laws of the commonwealth of Virginia, create a liability on stockholders of a Virginia banking corporation for an assessment on full-paid shares of the capital stock owned or held by them.

After the President's Proclamation of March 6, 1933 (12 USCA § 95 note), the bank was not licensed to open and never thereafter conducted a banking business. On March 14, 1933, a conservator was appointed, and on January 18, 1934, appellant was appointed by the Comptroller of the Currency as receiver and since has been in charge of the bank's affairs in the process of liquidation.

When the bank closed, appellees were holders and record owners, as trustees, of 2,044 shares of the capital stock of the bank of a par value of $20 per share. On July 5, 1934, the Comptroller, having officially found the bank to be insolvent, levied a 100 per cent. assessment on all stockholders.

This action was brought by the receiver to collect the assessment on the stock owned and held by appellees.

The trial court held against the receiver, and this appeal was taken.

We have lately had occasion in two cases to pass on the right of a receiver of a bank created by one of the United States, and doing a banking business exclusively in the District of Columbia, to recover the double liability of a stockholder of the bank where the law of the state of incorporation expressly imposed such liability.

The first of these cases is Washington Loan & Trust Co. v. Allman, 63 App. D. C. 116, 70 F.(2d) 282, 284. There the bank was incorporated under the laws of Arizona. It established a banking house in Washington—as its charter allowed—and did business there and nowhere else. The Comptroller, having determined it was insolvent, took possession, appointed a receiver, and made an assessment on the shareholders. Suit was brought by the receiver to recover the amount of the assessment. The defense was that, though the charter of incorporation and the con-

stitution of Arizona imposed double liability, the right to sue was governed by a statute of that state forbidding a receiver appointed outside of Arizona to enforce the liability. We answered this by saying that title 5, § 298, of the D. C. Code of 1929, gave authority to the Comptroller to take possession of an insolvent state bank having a banking house in the District of Columbia and to enforce the stockholder liability to the same extent as if it were a national bank. But we were careful to point out that the Allman Case did not involve the right of Congress to impose double liability on the shareholder of a foreign corporation. The question we were called on to decide was the narrower one—whether a receiver appointed by the laws of the place in which the corporation is doing business, and where its property is located, may, in order to pay its debts, enforce an acknowledged liability. As to this, we said the Arizona law and the charter of the bank "created a contract on the part of the shareholders which followed them wherever they might go, and, in the event of the bank's insolvency, made them liable to respond at the instance of a receiver lawfully appointed at the place where the business was done, as completely and as fully as if the appointment had been made in Arizona."

In the case of Harper v. Moran, Receiver, 64 App. D. C. 210, 76 F.(2d) 980, 981, decided March 4, 1935, the bank, as in the Allman Case, was an Arizona corporation. Its charter provided that its principal place of business should be in the city of Washington, and it did maintain a banking house in Washington and did conduct a banking business there. A stockholder was sued on an assessment by the Comptroller, and it was attempted to escape the rule announced in the Allman Case on the ground that, under the Arizona statutes as construed by the highest court of that state, there is no obligation upon a stockholder to pay anything until the precise amount he is liable to pay has been determined by a court of competent jurisdiction. And so it was insisted that no action could be maintained by a receiver appointed by the Comptroller, unless the amount was first determined in a proper proceeding for that purpose.

We denied this contention and held that the determination of the Comptroller con-

stituted a judicial ascertainment of the extent of insolvency and the pro rata amounts due by stockholders. In deciding the question, we said: "The answer, as we think, turns upon the provisions of the District of Columbia laws. When the bank obtained a charter of incorporation in Arizona for the express purpose of doing business exclusively in the District of Columbia, it contracted with reference to the laws of the District, and this is true, as well, as to the contracts of the stockholders between themselves. This, as we think, is the rule laid down by the Supreme Court in Pinney v. Nelson, 183 U. S. 144, 22 S. Ct. 52, 55, 46 L. Ed. 125." And then, referring to title 5, § 298, D. C. Code of 1929, we said: "The provision in question is notice to every banking organization incorporated under the laws of one of the states that, in coming into the District of Columbia to do business, it submits itself to the supervision and control, both in operation and in insolvency, of the Comptroller to the same extent as if it were a national bank."

The effect of these two cases is to hold that wherever the double liability of a stockholder is created by charter or the law of the state of incorporation, and the corporation engages in business in the District of Columbia, the liability may be enforced in the District by a receiver appointed by the Comptroller, in a suit against the stockholder.

From what has been said, it is clear that the question on which the present case turns is not controlled by anything decided in the Allman and Harper Cases. Here there is neither by-law nor corporate authority for exacting the double assessment and so, as we said in the outset, the real question is whether the laws of the District of Columbia create the liability.

The particular statute on which the receiver relics is title 5, § 298, of the D. C. Code of 1929.[1] By reference to that statute it will be seen that the Comptroller is given power, when in his opinion it is necessary, to take possession of any bank "for the reasons and in the manner and to the same extent as are provided in the laws of the United States with respect to national banks." It is clear that the words "for the reasons" will include insolvency of the bank, impairment of its capital stock (section 5203, R. S. [12 USCA § 87]), nonmaintenance of its reserve (section 5191, R. S. [12 USCA § 143]), forfeiture of its franchise (Act June 30, 1876, § 1 [12 USCA § 191]), and many other grounds which Congress has named as sufficient to authorize taking possession of a national bank; and it is equally clear that the words "in the manner and to the same extent" include the right to appoint a receiver, to collect the debts, sell the property, and likewise to take all necessary steps in the liquidation of the affairs of the bank; and—as we held in the Allman and Harper Cases—the enforcement of the personal liability of shareholders where there is such personal liability. But it is also true that there is nothing in the statute itself which expressly creates such liability, and so, admittedly, only by reading R. S. § 5151, as amended,[2] into the act can such liability be found.

[1] "Banking institutions to be under supervision of Comptroller of Currency.—All savings banks or savings companies, or trust companies, or other banking institutions, organized under authority of any act of Congress to do business in the District of Columbia, or organized by virtue of the laws of any of the States of this Union, and having an office or banking house located within the District of Columbia where deposits or savings are received, shall be, and are hereby, required to make to the Comptroller of the Currency and to publish all the reports which national banking associations are required to make and publish under the provisions of sections 5211, 5212, and 5213 of the Revised Statutes of the United States, and shall be subject to the same penalties for failure to make such reports as are therein provided, which penalties may be collected by suit before the supreme court of the District of Columbia. And the Comptroller shall have power, when in his opinion it is necessary, to take possession of any such bank or company, for the reasons and in the manner and to the same extent as are provided in the laws of the United States with respect to national banks. * * *"

[2] "The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such associations, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock. * * *" Act Dec. 23, 1913, § 23 .(12 USCA § 63 and note and § 64).

We think there is no warrant for this. It is fundamental that the liability of a stockholder is determined by the charter of incorporation and the laws of the state in which incorporation is had. In Morawetz on Corporations (2d Ed.) § 874, it is said the rule is, if the constitution to which a corporator has agreed does not provide for individual liability to creditors, he cannot be charged with individual liability anywhere. But, while this is true as a general proposition, it is also true, as is stated by Mr. Justice Brewer in Pinney v. Nelson, supra, the parties in making a contract may have in view some other law than that of the place of incorporation, and when this is so, the other law will control. And this brings us back to our original query, whether the District of Columbia law imposes double liability. In the view we take of the question, it should be answered in the affirmative only in the event the statute which it is claimed creates it is clear and unambiguous, for the double liability of the shareholders of a corporation depends on the terms of the statute creating it; and, as such a statute is in derogation of the common law, it cannot be extended beyond the words used. Brunswick T. Co. v. National Bank, 192 U. S. 386, 24 S. Ct. 314, 48 L. Ed. 491.

In our opinion, section 298 of the Code, supra, which authorizes the Comptroller to take possession of an insolvent state bank in the District of Columbia for the reasons and in the manner and to the same extent as is provided by the laws of the United States with respect to national banks, refers to procedure rather than to substantive liability. Unquestionably, we think, it incorporates all the national bank acts which have to do with the machinery of administration in the case of insolvent banks and gives to the Comptroller the same control and management of an insolvent state bank operating in the District of Columbia as in the case of national banks. It likewise includes all provisions for the collection of debts and the distribution of assets, and as well the enforcement of the liability of stockholders. But the language of the statute nowhere creates a liability where none exists. R. S. § 5151, as amended,

which is the section of the general law establishing double liability of bank stockholders, is by its terms confined to national banks, and there is nothing in D. C. Code 1929, T. 5, § 298, which will sanction our reading it into that section. We think it is not too much to say that if it was intended it should be, Congress would have said so in plainer language. This view is strengthened by the fact that Congress *has* imposed double liability upon stockholders of trust companies, loan companies, mortgage companies, safe deposit, and title corporations doing business in the District (D. C. Code 1929, title 5, c. 12, § 361 [3]). And the view we take is further strengthened by the fact that subsequent to the act imposing liability upon stockholders in the corporations named, Congress amended the act regulating banking institutions in the District of Columbia by enacting section 298 as it now appears, supra. The amendment was passed, as is shown by the report of the committee in charge of the bill, for the express purpose of creating additional power and jurisdiction in the Comptroller for the better *supervision* of state banking institutions doing business in the District of Columbia. But the new power granted, as is shown by its precise terms, and by the report accompanying the bill (House Rep. No. 924, 59th Cong., 1st Session), is expressly limited to regulation and is intended to provide, and does provide, that such banks shall make reports to the Comptroller and be subject to examination as is the case with national banks. But it goes no farther. Act June 25, 1906, 34 Stat. 458 (D. C. Code 1929, T. 5, §§ 298, 299).

It was not until the recent banking crisis that Congress saw fit to exercise a power—which we think undoubtedly exists—to enlarge the liability of stockholders in state incorporated banks in the District of Columbia. Act March 4, 1933, D. C. Code Supp. I, 1933, title 5, § 300a. That act expressly imposes double liability on stockholders—whose shares are acquired after March 4, 1933—of every savings bank and of every banking institution organized by virtue of the laws of any of the states of the Union to do, or doing, a banking business in the Dis-

---

[3] "All stockholders of every company incorporated under this chapter, or availing itself of its provisions under section 352 of this title shall be severally and individually liable to the creditors of such company to an amount equal to and in addition to the amount of stock held by them respectively. * * *"

trict of Columbia, and also upon every shareholder of the bank as of March 4, 1933, for obligations or debts incurred subsequent to the date of the enactment of the act. But, as these dates are inapplicable here, we mention it only as indicative of the congressional mind. The report of the committee which recommended the passage of the act contains language which unmistakably shows that the conclusion we reach in this case was then shared by Congress and the Comptroller, for it says: "While the shareholders of national banks and trust companies doing a business in the District of Columbia are subject to double liability for impairment of capital of the institution and have double liability in the event of the failure of such institution, which acts as a material aid in bringing about corrections in a going bank as well as being an additional protection to depositors, there exists no provision of law at the present time placing on shareholders of foreign corporations doing a banking business in the District of Columbia or shareholders of District of Columbia savings banks such double liability. * * *" And in the statement of facts accompanying the report, the committee declares: "The provisions of this bill have been recommended by the Comptroller of the Currency for several years." Ho. Rep. No. 859, 72d Cong. 1st Session.

While it is, of course, fundamental that the construction by the Comptroller of the law in question, even over a long period of years, is not determinative nor binding on the courts, where, as here, the law is at best doubtful and uncertain, resort may always be had to the practices of the executive departments. Here there is both executive and legislative construction against the asserted power.

In view of this and what we have already said, it is hardly necessary to add that we are unable to find in D. C. Code 1929, T. 5, § 298, any words creating the liability claimed, or to find by necessary implication that the section plainly and convincingly adopts the national banking law of double liability. To the contrary, we think it does not, and consequently we hold that the law of Virginia by which this bank was created governs in measuring the liability of appellees as stockholders.

Affirmed.

HITZ, Associate Justice (dissenting).

I am unable to agree with the opinion and judgment of the court in this case, because, as I think, the opinion proceeds upon a meager and narrow construction of statutory provisions to a conclusion contrary to their purpose, and which defeats their object.

When this group of Washington business men brought their Virginia charter across the Potomac river and set up in the city of Washington the bank's only place of business, it necessarily accepted and adopted all provisions of local law governing local banks, including the acts of Congress intended in general terms to place banks created outside of the national banking system on the same footing as national banks doing business in the District of Columbia.

I read these statutes as intending not only to give the national banking authorities certain powers of visitation and inspection, and to define how and why and when the Comptroller may take control, but as imposing the same liabilities and regulations upon state banks as upon national banks doing business here, both in respect of report and condition, and in respect of protecting depositors and other creditors as against the owners of the bank, by the same liability upon stockholders for the debts of the bank.

This regulation and liability a state bank could accept by coming here, or escape by staying away, but it could not do both; which is precisely what this judgment permits this bank to do.

The legislation of 1933 advocated and enacted out of abundant caution in a time of panic, but cited by the opinion as first creating this liability where it did not exist before, while it dispelled a doubt and clarified an uncertainty, only reiterated in specific terms the previous purpose of Congress, more generally expressed, to place upon state banks volunteering to do business in the District of Columbia the same liabilities and regulations imposed upon national banks doing business here.

Under the judgment of the court in this case, forty-eight state banks engaged here in the same business at the same time could have forty-eight separate measures of liability of their stockholders to their creditors, all differing from each other, and all differing from the liability of national banks in the same respect, yet all operating within the legislation of

Congress intended to make such liability uniform and equal.

While this construction of the statutes is legally possible, it is neither reasonable nor necessary, and I cannot accept the judgment as a sound conclusion, though recognizing its value as a demonstration that a foreign charter for a local bank is a source of danger in the community.