**THOMPSON et al. v. PARK SAV. BANK et al.**

et al.

No. 6635.

United States Court of Appeals for the
District of Columbia.

Reargued Dec. 7, 8, 1937.
Decided March 7, 1938.

J. Bruce Kremer, George B. Springston, Herbert M. Bingham, E. Hilton Jackson, William E. Richardson, and Ward B. McCarthy, all of Washington, D. C., for appellants.

Joseph T. Sherier and Otis Beall Kent, both of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and STEPHENS and MILLER, Associate Justices.

GRONER, C. J.

Park Savings Bank was incorporated August 30, 1909, under the laws of Alabama to do a banking business. The capital stock was limited in amount to $50,000, and the duration of the corporation fixed by its charter and the laws of Alabama was twenty years, with the privilege of extension. From its incorporation to March 6, 1933, the bank was engaged exclusively in a general banking business in the District of Columbia. Most of its stockholders, directors, and officers lived in the District of Columbia, where it established its banking house and where its business was done. On October 11, 1928, a little less than a year before the time of expiration of its charter, an amendment to the articles of incorporation was filed and approved by the authorities of the state of Alabama increasing the authorized capital stock to $100,000. On March 6, 1933, the bank was closed by order of the President, and on March 9 following, a conservator was appointed who in turn was succeeded by a receiver (Moran), who took over the assets of the bank under the directions of the Comptroller of the Currency. At the time of closing the bank was hopelessly insolvent; the greater part of its assets having been embezzled by its principal officer, who shortly after the closing committed suicide.

In November, 1933, Joseph W. Thompson, Mary E. Allan, Harry A. Rearick, and Anna V. Livingstone, as depositors and creditors of the bank, brought a class suit against the bank, Moran, receiver, O'Connor, Comptroller, and the directors of the bank. The purpose of the suit was to hold the directors liable for losses to depositors growing out of the bank's failure. The suit was based on the contention that the directors were trustees as to some depositors and partners as to others. The bill charged that under the Alabama laws the term of the bank's charter expired on August 30, 1929, and that after that time the bank ceased to have corporate power to engage in any business except the liquidation of its affairs; that under the Alabama statutes the directors became trustees for the sole purpose of winding up the affairs of the corporation; that instead of liquidating, the directors in the name of the bank continued to engage in a general banking business in the District of Columbia in the same manner as before; that they paid dividends, made reports to the Comptroller of the Currency, and were examined by the Comptroller in accordance with the applicable District of Columbia statutes.[1] The bill charged the liability of the directors as liquidating trustees of the assets of the bank existing on August 30, 1929, and as partners as to transactions subsequent to August 30, 1929, and prayed for the appointment of a receiver in the place of the receiver appointed by the Comptroller. In June, 1934, Moran, receiver, by permission of the court, filed a cross-bill praying on his own behalf the same relief sought by the plaintiffs in the bill. The defendants (directors) moved to dismiss the bill and the cross-bill, and the trial court, at the hearing, held: That after the expiration of the time fixed in its charter the bank continued in existence as a de jure corporation with limited powers; that the directors were not liable as partners or otherwise for losses resulting from the conduct of the business after August 30, 1929; but that the bill stated a cause of action against the directors, as trustees, as to the depositors on August 30, 1929, who thereafter left their balances in the bank.

Pursuant to its holding, the court entered a decree dismissing the bill and cross-bill as to those parts charging liability of the defendant directors, either as copartners or otherwise, on account of transactions after August 30, 1929, and refusing to dismiss as to the part charging liability as liquidating trustees of the property which did or should have come into their hands as such trustees at the expiration of the charter on August 30, 1929. This action affected specifically Thompson, one of the plaintiffs, who had become a depositor after August 30, 1929. On petition of Moran, receiver, we grant-

---

[1] D.C.Code 1929, T. 5, § 298, and section 299, as amended by Act March 4, 1933, § 3, 47 Stat. 1566, D.C.Code Supp. II, 1935, T. 5, § 299.

ed a special appeal, and Thompson came up on a regular appeal. In April, 1935, we affirmed the decree of the lower court so far as the same was appealed from by Moran, receiver, and Thompson. In our opinion, we said, 64 App.D.C. 308, 77 F.2d 955, 958:

"This appeal, therefore, relates only to the alleged liability of the directors of the bank for such obligations as were incurred after August 30, 1929. No relief was sought in this case against the stockholders. The sole question is whether the individual directors of the bank became liable for the deposits received by the bank when it continued in the operation of the banking business after August 30, 1929.

"It is our opinion that the foregoing facts do not show a liability of the directors for the deposits made with the bank subsequent to August 30, 1929, and that the ruling of the lower court to this effect is correct.

"We are satisfied that the provisions of section 7069 of the Alabama Code, supra, that the directors as liquidating trustees of the bank shall be 'jointly and severally liable to its creditors and stockholders to the extent of the property which may come into their hands,' relate solely to the assets of the bank as they existed on August 30, 1929, and do not refer to the deposits made with the bank after that date. This construction is justified by the language and purpose of the act. * * *

"Under the statutes of Alabama, the bank's existence as a de jure corporation was continued for the period of five years following August 30, 1929. The corporate powers of the bank, however, during this period were limited to the liquidation of its affairs, and it was expressly prohibited from continuing a general banking business during this time. The action of the bank in continuing the banking business after August 30, 1929, was ultra vires, but this did not have the effect of dissolving the corporation, for such a dissolution in invitum could be effected only by appropriate action of the state of Alabama. So long, therefore, as Alabama took no action to dissolve the corporation, it continued to exist, notwithstanding the fact that the conduct of its business as a general banking corporation was ultra vires. Lehman, Durr & Co. v. Warner, 61 Ala. 455; Force

v. Age-Herald Co., 136 Ala. 271, 33 So. 866; Snider's Sons' Co. v. Troy, 91 Ala. 224, 230, 8 So. 658, 11 L.R.A. 515, 24 Am. St.Rep. 887; Morawetz, Private Corporations, vol. 2, § 1002, p. 963. However, whether it be said that the action of the bank in this particular was that of a de jure corporation acting ultra vires, or was that of a de facto corporation acting totally beyond any de jure powers, does not seem to be controlling in this case. In either view the bank purported to act as a corporation, and the depositors dealt with it as such. See our opinion in American Surety Company of New York v. John F. Moran, Receiver Park Savings Bank, 64 App.D.C. 127, 75 F.2d 646, certiorari denied [294 U.S. 720] 55 S.Ct. 546, 79 L.Ed. [1252].

"The persons thereafter dealing with the corporation as depositors were charged with a knowledge of the terms of the corporate charter. They therefore knew, either actually or constructively, that the bank was not then authorized by its charter to proceed with a general banking business. Therefore they are estopped to deny the legality of the bank's actions and cannot hold the directors or stockholders liable individually or as partners."

The effect of our decision on the former appeal was to hold that the individual directors of the bank were not liable for deposits received by the bank when it continued in the operation of the banking business after August 30, 1929. This ruling applied to Thompson, and to those in like situation, who had not become depositors until after August 30, 1929, and of course it applied equally to existing depositors, so far as concerned money deposited after August 30. We sent the case back to the court below for a trial only as to those persons whose money was in the bank prior to the August 30 date. Thereafter, answers were filed, and the cause was heard on the merits. At the conclusion of the trial the judge signed findings of fact substantially as we have related them, and in addition he found that: "A certain number of persons who were depositors on August 30, 1929, left their funds with the bank, thereafter neither adding to nor withdrawing therefrom, but receiving from the bank interest on such deposits. Other depositors who were such on August 30, 1929, continued thereafter to make deposits to and withdrawals from their accounts;

while still others made only additional deposits to or withdrawals from their accounts."

And also: "The plaintiffs in all respects relied upon and dealt with the bank as a corporation, and with its officers and directors as officers and directors of a corporation."

On this ground the court concluded that:

"* * * Depositors and other creditors of the Park Savings Bank who dealt with it as an existing corporation subsequent to August 30, 1929, are estopped, by such dealings, to question its corporate existence and hence the defendants as directors of the bank are not liable as liquidating trustees or otherwise to the plaintiffs or other creditors occupying a like situation"—and dismissed the bills.

The findings of the court below divide the depositors into four groups: (1) Those who neither deposited nor withdrew money after August 30, 1929; (2) those who only withdrew money; (3) those who only deposited additional money; and (4) those who both deposited and withdrew.

■ The nonliability of the directors for deposits made after August 30, 1929, having been decided on the former appeal, is now the law of the case,[2] and the only question which we have to decide on this appeal is whether the depositors in the bank on August 30, 1929, whose money has not since been paid to or withdrawn by them are entitled to maintain this suit.

The question involves, first, a consideration of the provisions of the law of Alabama, in which state the bank was incorporated.[3] These provisions appear at length in our former opinion, 64 App.D.C. 308, 309, 77 F.2d 955, 956. The Constitution of Alabama 1901, § 251, provides that every bank shall be required to cease all banking operations within twenty years from the time of its organization unless the time be extended by law, and promptly thereafter to close up its business; but after it has closed its business it shall have corporate capacity to sue and shall be liable to suits until its affairs and liabilities are fully closed. Section 6383 of the Alabama Code 1928, authorizes an additional twenty years' extension of the charter at any time before the expiration of the original term, and section 6384 outlines the methods which shall be adopted to this end. Section 7069 extends the life of a corporation dissolved by forfeiture or by any other cause except by judicial decree for a term of five years after dissolution for the purpose of disposing of its property and settling its business, etc., but not for the purpose of continuing business, and further provides that the directors of the corporation shall be held jointly and severally liable to its creditors and stockholders to the extent of the property which may come into their hands at the time of dissolution.

■ August 30, 1929, was the expiration date of the charter of the Park Savings Bank, and on the former appeal we said at that time the bank's corporate powers were limited to the liquidation of its affairs, and that it was expressly prohibited from continuing a general banking business. In determining now the question whether the directors are liable as liquidating trustees, we think it is of no importance whether the bank in the business it thereafter transacted should be considered and held as a de facto corporation. The liability sought to be imposed in this suit is not the liability of the bank, its officers, or its directors at the time it failed, but the liability of the directors who were such in 1929, as trustees of a fund which by operation of law should have come into their hands on the day in question; and in that view it is equally of no importance whether the bank by consent of the trustees mistakenly continued to use the fund and to commingle it with other funds in the operation of the banking business. The question is rather whether the depositors in their subsequent dealings and by their conduct waived their right to an accounting, or (as the trial judge thought) they are now equitably estopped to demand it. If under the Alabama statutes failure of the bank's stockholders to renew the charter dissolved the corporation and created out of its then assets a trust fund in the hands of the directors for the benefit of its then stockholders and creditors, and of this there can be little, if any, doubt,[4] then necessarily the liability of the directors

---

[2] District of Columbia v. Brewer, 32 App.D.C. 388; Thompson v. Maxwell Land-Grant & R. Co., 168 U.S. 451, 456, 18 S.Ct. 121, 42 L.Ed. 539.

[3] Harper v. Moran, 64 App.D.C. 210, 76 F.2d 980; Hamilton, Rec. v. Offutt, 64 App.D.C. 385, 78 F.2d 735.

[4] Weatherly v. Capital City Water Co.,

at that instant accrued for the faithful discharge of the statutory duty. A right of action then arose in favor of, and enforceable by, the depositors[5] who were such at that time, unless such depositors by their conduct or otherwise have lost all right to require the directors to account. Here, then, we have a case in which by fair implication it may be assumed that the failure to obtain an extension of the charter was inadvertent. The bank continued on after the expiration date of its charter as though nothing had happened. Six or eight months prior thereto it had obtained the consent of Alabama to an increase of its capital stock and had exercised the power. Thereafter, and until it was closed, it continued to pay its taxes and license fees to Alabama and to the District of Columbia, to declare dividends, to be examined by the Comptroller, to publish reports of its condition, etc., and generally to conduct its business as it had been conducted from the original date of incorporation. The case, as to the directors equally with the depositors, is therefore wholly lacking in any element of bad faith.

In our former opinion we said that after the expiration date of the charter and the continuation of the business, the persons who thereafter dealt with the bank as depositors were charged with constructive knowledge of the terms of the charter and of the laws of the state of Alabama. If we apply this rule, we have a situation in which, in the absence of a direct showing that either the plaintiff depositors on the one hand or the defendant directors on the other had actual knowledge of the expiration of the charter of the bank, all were presumed to have knowledge of the happening of that event; and so we get back to the question whether the depositors by continuing to deal with the bank after the charter expired are precluded from asserting their original right to look to the directors for an equitable distribution of the fund which by the terms of the statute it was their duty to distribute in liquidation of the bank's obligations. In other words, whether the directors in the circumstances can escape their liability as trustees by claiming either waiver, ratification, or estoppel. We think the question must be answered in the negative. The laws of Alabama, as we have seen, on the dissolution of the bank created an express trust as to which the directors were trustees and the depositors the cestui que trustent. Pankey v. Lippman, supra. Assuming, as we do, that both had equal opportunity of knowing the statute had not been complied with or, in other words, that both were mistaken in their conduct, the one in continuing the bank, the other in continuing to deal with it as such, the rule to be applied is, that to establish waiver or ratification by a cestui que trust it must be shown that the waiver or ratification was made with full knowledge of all the material particulars and circumstances, and that the cestui que trust was fully apprised of the effect of the acts ratified, and of his or her legal rights in the matter. Con-

---

115 Ala. 156, 175, 22 So. 140, 143; Anderson v. Buckley, 126 Ala. 623, 629, 28 So. 729, 730; Pankey v. Lippman, 187 Ala. 199, 65 So. 771, 772. In the Weatherly Case the Alabama court, speaking of the effect of a corporation dissolved by order of court under the statute, said: "Upon dissolution, the corporation is essentially dead, except for the general purpose of collecting its assets, paying its debts, and dividing its property and money remaining after the satisfaction of its liabilities among its stockholders. For the purposes of the enterprises or business which it was chartered to carry on, it is as essentially dead as if we had no statute continuing its life for the other specified purposes, as if, indeed, it had never existed at all."

And in the Anderson Case, which involved a dissolution by expiration of the charter, the Alabama court said: "The dissolution of the corporation was not a voluntary dissolution, as upon petition by a majority of the stockholders owning three-fourths of the stock, but involuntary, by operation of the law, and as much so as if its charter had been forfeited by a decree or judgment of a court of competent jurisdiction upon adversary proceedings instituted against it for that purpose."

In the Pankey Case the court said: "The legal effect of Code, § 3516 [now 7069, 1928 Code]—manifestly so intended by the lawmakers—is to constitute the property and rights of a corporation dissolved otherwise than by judicial decree a trust fund, with the directors as trustees, to effect the righteous purposes set down in the statute. One of these is to pay the obligations incurred, assumed, or imposed during the active life of the corporation."

5 Pankey v. Lippman, supra.

firmation and ratification, (and this is true also of waiver) it was said by the Court of Appeals of New York in Adair v. Brimmer,[6] imply to legal minds, knowledge of a defect in the act to be confirmed, and of the right to reject or ratify it. The cestui que trust must, therefore, not only have been acquainted with the facts, but apprised of the law, how these facts would be dealt with by a court of equity. All that is implied in a case of waiver or in the act of ratification, when set up in equity by a trustee against his cestui que trust, must be proved, and will not be assumed. The maxim ignorantia legis excusat neminem cannot be invoked in such a case. The cestui que trust must be shown to have been apprised of his legal rights. The same rule was approved in Cumberland Coal & Iron Co. v. Sherman, 20 Md. 117, 151, and Schroeder v. American Nat. Red Cross, 215 Wis. 54, 254 N.W. 371. Judge Hough, likewise, in Gates et al. v. Megargel, 2 Cir., 266 F. 811, 820, said it is plain law that a cestui who has been wronged by his trustee can only be held to have ratified when he not only knows the facts, but is informed of his rights under the law. Here, admittedly, the depositors had no actual knowledge of the expiration of the charter or their legal rights in that case.

 Nor, as we think, are the directors in any better condition under the doctrine of estoppel, for in the case of estoppel the party alleging it—in this case the directors—must show that he has done something or omitted to do something in reliance upon the other party's conduct by which he will now be prejudiced if the facts are shown to be different from those upon which he relied. Where the parties have equal knowledge or opportunity of knowledge, or where the facts are known equally to both, or both have equal means of ascertaining them, there can be no estoppel. Brant v. Virginia Coal & Iron Co., 93 U.S. 326, 335, 23 L.Ed. 927; Steel v. St. Louis Smelting Company, 106 U.S. 447, 456, 1 S.Ct. 389, 27 L.Ed. 226; Rogers v. Colville, 145 Tenn. 650, 663, 238 S.W. 80; Mechem on Agency, 2d Ed., § 349.

In this view we think the lower court was wrong in holding, as it did, that there is no difference between the situation of the depositor who dealt with the bank after the 30th of August, 1929, and the depositor whose money was in the bank when the charter expired and the trust arose. As to the latter, the obligation of the directors as trustees came into being by the statute, and plaintiffs and others in like situation, upon a showing that they are in that class, are entitled to the benefits of the trust to the extent of their deposits as of August 30, 1929, and except to the extent that their deposits as of that date were withdrawn after that date. The case will, therefore, be remanded to the lower court, with instructions to set aside the former decree and refer the case to an auditor for an accounting to determine which depositors of the bank as of August 30, 1929, continued as such, and to determine what part of their deposits as of that day remained in the bank during the ensuing period.

Reversed and remanded.

### On Petition for Rehearing.

### PER CURIAM.

Three grounds are argued on the petition for rehearing. There is nothing in the first two grounds that is not discussed in the opinion.

 The third ground is that the language of section 7069, Alabama Code of 1928, properly construed, shows that the expiration of the charter by limitation of itself does not work a forfeiture, but that there must be expiration accompanied by a dissolution proceeding. The language of the statute is: "Corporations whose charters expire by limitation *and* which are dissolved by forfeiture or by any other cause, except by judicial decree," etc.

Counsel insist that the italicized word "and" sustains the interpretation contended for by them. We have given the point careful consideration, but we are unable to follow counsel's view in this respect.

The Constitution of Alabama specifically limits the life of a bank to twenty years from the time of organization and requires it then to close up its business and to settle its affairs and liabilities. Sections 6383 and 6384 of the Alabama Code of 1928 authorize extension for an additional twenty years on application at any time before the expiration of the original term, and provide a method to this end. Section 7069, applying general-

---

ly to corporations, contains the language which it is now said requires something more than the time limitation of the charter to put an end to the bank's existence. As section 7069 now appears, it is a consolidation of four sections of the Alabama Code of 1896, sections 1298, 1299, 1300, and 1301. These sections in turn had been brought down in successive codifications, at least from 1852. The original provision, Code 1852, § 1489, was: "All such corporations, whose charters expire by their own limitation, or are annulled by forfeiture, or dissolved for any other cause, exist as bodies corporate for the term of five years," etc.

This section was modified in the Code of 1886, § 1690, to read: "All corporations whose powers expire by limitation, all which are dissolved by forfeiture or any other cause, exist as bodies corporate for the term of five years," etc.

As interpreted by the Supreme Court of Alabama, the language above was held to apply to an involuntary dissolution by operation of law upon the expiration of the charter period, Anderson v. Buckley, 126 Ala. 623, 629, 28 So. 729; and there is nothing in the statutory provision or in the decisions of the court which supports the view that corporations which expire by limitation must also be "dissolved by forfeiture or by other cause." We think it not proper to read the present statute differently.

In the Code of 1907 the present section (7069) first appeared, as follows:

"3516. Exist for five years after dissolution by limitation or forfeiture for certain purposes.—

"Corporations whose charters expire by limitation and which are dissolved by forfeiture or by any other cause * * * exist as bodies corporate for the term of five years," etc.

It is clear that under the prior sections the Legislature had in mind at least two distinct classes of corporations which should continue to exist for five years; namely, those whose charters expired by limitation and those which were dissolved by forfeiture or by some other cause. These two classes would, indeed, embrace all corporations whose existence terminated in any manner. The necessary effect of appellees' argument is that now the Legislature has made the five-year provision applicable to one class of corporations only; namely, to corporations whose charters expire by limitation and which corporations have in addition been dissolved by forfeiture or by any other cause. In other words, appellees contend that there must be a concurrence of two conditions, expiration by limitation and dissolution by forfeiture or by other cause, before section 7069 becomes applicable. This construction would totally exclude from the force of the statute a large class of corporations; namely, those whose existence was terminated for cause but whose charters had not expired by limitation. We think the best proof of the fallacy of this argument is the fact that the courts of Alabama have applied section 7069 to cases where expiration by limitation was not present, but where dissolution by forfeiture or by other cause was present. Pankey v. Lippman, 187 Ala. 199, 65 So. 771, was a case where dissolution was effected by agreement of all the stockholders. This clearly was dissolution "by any other cause," and the court held that a bill based on section 3516, now section 7069, stated a good cause of action. Similarly, in Cohen v. Pavlik, Ala.Sup.1938, 178 So. 435, section 7069 was held applicable where dissolution was effected by the stockholders. In neither of these cases does it appear that the charters of the corporation involved had expired by limitation. Thus it is apparent that expiration by limitation and dissolution by forfeiture or other cause need not be simultaneously present in order for section 7069 to apply; and it is equally obvious that if appellees' argument will not work both ways it is not correct.

We think the statute as it is now phrased means to describe (just as it always has) two classes of corporations which continue for five years; namely, "Corporations whose charters expire by limitation and [corporations] which are dissolved by forfeiture or by any other cause." Unless this construction is the true one, the Supreme Court of Alabama has many times since 1907 fallen into error.

The petition for rehearing is denied.