**HELVERING, Commissioner of Internal Revenue, v. ETHEL D. CO.**

**No. 6038.**

Court of Appeals of the District of Columbia.

Argued March 12, 1934.

Decided April 9, 1934.

Sewall Key, E. E. Angevine, E. Barrett Prettyman, Shelby S. Faulkner, F. R. Shearer, and Milford S. Zimmerman, all of Washington, D. C., for petitioner.

Robert A. Littleton, of Washington, D. C., and M. K. Wild, of Fresno, Cal., for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Ethel D. Company is a corporation of California with its principal place of business in San Francisco. It filed in due time its income and profits tax return for the year 1919 in the office of the United States collector at San Francisco. The Commissioner of Internal Revenue determined a deficiency, and on September 26, 1927, duly mailed respondent a notice of the same. The statutory period of limitations expired on March 6, 1925. The Commissioner insists that, notwithstanding the period of limitations had run, the tax was assessable because an unlimited waiver had been executed by respondent April 1, 1925. Respondent did not deny the execution of such a waiver, but defended on the ground that in the same month in 1925, but subsequent to the April 1st waiver, and at the request of the Commissioner, it executed a second waiver which superseded the first, and in which it agreed that any additional tax to be assessed on account of its 1919 return should be assessed prior to December 31, 1925. After the deficiency assessment, respondent appealed to the Board of Tax Appeals. The Board found as a fact that the intention of the parties (respondent and Commissioner) in executing the second waiver was to substitute a definite period of limitation for an indefinite one, and consequently held the tax barred by the statute.

The Commissioner has filed a petition for review, and says that the Board erred in deciding that the unlimited waiver was abrogated by the filing of the limited waiver, and likewise erred in deciding that the Commissioner intended that the second waiver should be substituted for the first.

For the sake of clarification, we quote from the opinion of the Board as follows:

"The statute of limitations started to run on March 6, 1920, and under the provisions of section 250 (d) of the Revenue Act of 1918 (40 Stat. 1083) the respondent [petitioner here] had five years from that date to assess and collect any additional tax found to be due. The statutory period expired on March 6, 1925. Thereafter, on April 1, 1925, the petitioner [respondent here] filed an unlimited waiver of the statute of limitations, which, being prior to the passage of the Revenue Act of 1926 (44 Stat. 9) was effective to revive and extend the statute which had theretofore tolled. Stange v. U. S., 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. 335; Wells Brothers Co. of Ill. et al. v. Com'r, 16 B. T. A. 79; Pittsburgh Union Stockyards Co. v. Com'r, 16 B. T. A. 139. An unlimited waiver extends the statutory period for a reasonable time, or until termination by either party upon reasonable notice. Wirt Franklin v. Com'r, 7 B. T. A. 636; Greylock Mills v. Lucas, Com'r, 9 B. T. A. 1281, affirmed (C. C. A.) 31 F.(2d) 655, certiorari denied 280 U. S. 566, 50 S. Ct. 25, 74 L. Ed. 619; William S. Doig, Inc., v. Com'r, 13 B. T. A. 256; Corn Products Refining Co. v. Com'r, 22 B. T. A. 605; and Herman Frost v. Com'r, 23 B. T. A. 411. The second waiver, which was requested immediately upon receipt of the first, fixed a definite date for the termination of the statutory period, and in our opinion was a reasonable and sufficient notice to effect a termination of the unlimited waiver as of that date. If the first waiver remained in effect after the execution of the second, the latter could have had no meaning. Since the respondent required the second waiver after his receipt of the first, it is clear that he must have intended that it should be substituted for the unlimited waiver, which we think was abrogated by the request for and the execution of the second waiver. The statute of limitations had run on September 26, 1927, and the respondent was barred from making any further determination with reference to petitioner's tax liability."

The point in the case is confined to the single issue whether the Board was correct in holding that the making and acceptance of the second waiver abrogated the first. The answer, as we think, depends upon the intention of the parties at the time of the event in question.

The Supreme Court has decided that a waiver is not a contract, and that the provi-

sion requiring the Commissioner's signature was inserted for purely administrative purposes and not to convert into a contract what is essentially a voluntary unilateral waiver of defense by a taxpayer. Stange v. U. S., 282 U. S. 270, 276, 51 S. Ct. 145, 75 L. Ed. 335. But notwithstanding this holding, it is perfectly obvious that, if a taxpayer executes a waiver and for some reason it is not satisfactory to the Commissioner, who thereafter requests and obtains a new and different waiver but concerning ·the same subject-matter, he would not later be heard to claim any rights under the first. A waiver is generally defined to be the surrender or relinquishment of an existing right. It is an agreement to forego some advantage which the party waiving might at his option have demanded, but, in order to be effective, there must be reasonable knowledge of all the facts and rights intended to be waived before they can be said to have been waived. Here, as we have seen, the Board has found that both the Commissioner and respondent intended that the second or limited waiver should supersede and take the place of the first or unlimited waiver, and, if the Board's finding in this respect can be sustained by any evidence, the point at issue is foreclosed against the government, for it is now well settled that findings of fact of the Board when supported by evidence are conclusive. Phillips v. Commissioner, 283 U. S. 589, 600, 51 S. Ct. 608, 75 L. Ed. 1289; Henderson Iron Works & Supply Co. v. Blair, 58 App. D. C. 114, 25 F.(2d) 538.

We proceed, therefore, to examine the record to determine if there is any evidence upon which to sustain the finding by the Board that the second waiver "was requested immediately upon receipt of the first" and was intended to be substituted for the first.

The evidence shows that the first waiver dated April 1, 1925, was received at the office of the collector in San Francisco on that date and was forwarded by the collector to the Bureau in Washington, where it was received at 2:29 a. m. on April 13. Certain markings on the waiver were explained as indicating that immediately after its receipt it was routed by the mail clerk to the particular person in charge of the case in the special assessment section, and respondent argues from this fact that the same person to whom the first waiver was routed, and who, it was also shown, wrote the letter of April 13, inclosing and requesting execution of the second waiver, must have received the first waiver on the morning of the 13th prior to the writing and posting of the letter inclosing the second waiver. This the Board found as a fact. The government now argues that this inference must be disregarded if verity be given to the records of the Commissioner's office, for the first waiver, though received in the Bureau on the 13th, is shown by stamping on it not to have been received in the special assessment section until four days later. But with nothing more than this, we think we would not be justified in reaching a conclusion diametrically opposed to that reached by the Board on this question of fact. There is nothing in the correspondence passing between the Commissioner and taxpayer which throws any positive light on the subject. The Commissioner requested the taxpayer to execute the second waiver, which was on a form different from that executed first. The taxpayer in turn executed the waiver and called attention to the fact that it had already executed a different one on April 1. The answer of the taxpayer is consistent with the finding of the Board that in signing the second waiver it acquiesced in the request of the Commissioner because it understood the first was not satisfactory and that the second was intended to replace it.

It is of interest in this connection, and throws some light on the question, that just a few months prior to the correspondence the Commissioner had by a departmental ruling limited all unlimited waivers then on file to a definite date, and that thereafter the practice of the Bureau in the request for waivers from taxpayers was to limit the time of the waiver to the period of one year. A new form of waiver was adopted and substituted for the old form. The waiver first signed by respondent was on an old and obsolete form. There was doubt whether it was not terminable by the taxpayer on notice, and likewise doubt whether it would terminate without notice after a reasonable time, and it referred to statutes some of which had been repealed. It may very well be, as the Board found, that these reasons impelled the request for the second waiver, and that they likewise indicate the purpose of the parties in executing it, and in this view we should have to affirm the Board's decision.

But in addition to what has just been said, it is fair to point out that, without regard to the motive inducing the request for the second waiver, it is undeniable that, when it was returned by the taxpayer and received by the Commissioner, the first waiver had been received and filed. If the Commissioner was satisfied that it conformed to the re-

quirements of the law and rules in relation to waivers and that it was effective to extend indefinitely the time of making the assessment, it was obvious that the second waiver added nothing to what the government already had. Notwithstanding this, the evidence shows the second waiver was accepted and agreed to by the Commissioner. The Board has found as a fact that in this respect the Commissioner intended that it should be substituted for the unlimited waiver, and, since both waivers covered the same subject-matter but were inconsistent with one another in relation to the time element, the rule with relation to agreements between the same parties concerning the same subject-matter is applicable. In such circumstances, it has invariably been decided that the later rather than the earlier writing will be held to be the agreement between the parties on the subject. The statement of the law in this respect is admirably put by Judge Sanborn in Housekeeper Pub. Co. v. Swift (C. C. A.) 97 F. 290, 294. The case was one involving two contracts for the sale of the same land. In the first the seller agreed to convey the land in consideration of $25,000 in cash and $25,000 in notes, and in the later one for $25,000 in cash without any notes. In answer to the query what was the legal effect of the subsequent contract upon its predecessor, he said: "There can be no doubt concerning the answer which ought to be given. * * * The later contract covers the entire subject-matter of the earlier one. It is complete in itself. It is inconsistent with the preceding contract. The two cannot stand together. * * * A subsequent contract completely covering the same subject-matter, and made by the same parties, as an earlier agreement, but containing terms inconsistent with the former contract, so that the two cannot stand together, rescinds, supersedes, and is substituted for the earlier contract, and becomes the only agreement of the parties on the subject."

Of course, the rule is subject to this qualification, that the inconsistency between the old and the new is not the result of fraud or mistake, but there is no claim of this nature here, and, as we have already observed, the Board has found as a fact that it was the intention of the parties to supersede the old waiver with the new. Nor can there be any doubt of the inconsistency of the two waivers. The first was unlimited. The second required the government to make the assessment prior to the end of the calendar year in which it was executed. In such circumstances, it has been held that the provisions of the first clearly inconsistent with the provisions of the later one will be superseded; the inconsistent provisions of the first yielding to those of the second. Myers v. Carnahan, 61 W. Va. 414, 420, 57 S. E. 134; Wiley v. Dixie Oil Co. (C. C. A.) 43 F.(2d) 51.

Petitioner urges as an additional reason for sustaining the decision of the Board that, even if the unlimited waiver be construed as unaffected by the limited provisions of the second waiver, in any case it was only effective for a reasonable time and that the assessment made August 30, 1927, or more than six and a half years after the tax accrued and two and a half years after the execution of the waiver, was made after a reasonable time. The Board of Tax Appeals has held in a number of cases that an unlimited waiver extends the statutory period for a reasonable time or until terminated by the taxpayer upon reasonable notice. Franklin v. Com'r, 7 B. T. A. 636; Appeal of Cunningham Sheep & Land Co., 7 B. T. A. 652; Greylock Mills v. Com'r, 9 B. T. A. 1281; Doig, Inc., v. Com'r, 13 B. T. A. 256. And the Circuit Court of Appeals for the Second Circuit in Greylock Mills v. Commissioner, 31 F.(2d) 655, 658, said of unlimited waivers: "We think they should expire only after the taxpayer gives notice to the Commissioner that he will regard the waiver as at an end after a reasonable time." That the taxpayer would have the right to terminate such a waiver by notice is admitted, and we are also disposed to think that the waiver would fall of itself after a reasonable time, but we need not decide that question or attempt to formulate a rule to determine what is or is not a reasonable time, since, as we have already said, we regard the case here as involving only a question of fact, which, in turn, has been definitely found by the Board against the Commissioner, and which we find there is evidence to sustain.

Affirmed.