**DISTRICT OF COLUMBIA, Petitioner**

v.

**CHEVRAH TIFERETH ISRAEL, Respondent.**
**No. 15492.**

United States Court of Appeals District of Columbia Circuit.

Argued April 27, 1960.

Decided May 19, 1960.

Mr. Leo J. Ehrig, Jr., Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corporation Counsel, Milton D. Korman, Principal Asst. Corporation Counsel, and Henry E. Wixon, Asst. Corporation Counsel, were on the brief, for petitioner.

Mr. J. Hampton Baumgartner, Jr., Washington, D. C., with whom Mr. James C. Wilkes, Washington, D. C., was on the brief, for respondent. Mr. Ellis N. Slack, Washington, D. C., also entered an appearance for respondent.

Before FAHY, WASHINGTON and DANAHER, Circuit Judges.

FAHY, Circuit Judge.

The factual situation essential to understand the legal problem may be explained somewhat briefly. Chevrah Tifereth Israel, referred to as the taxpayer, is a religious corporation. It owned land described as Lots 800 and 806 in Square 2665 in the District of Columbia. The lots were contiguous. On Lot 800 there was a synagogue where religious services were conducted regularly. Lot 806, with which we are concerned, was exempted from real estate taxes for the years 1944–1958 under the provisions of the District of Columbia Code applicable to "additional grounds" belonging to and forming a part of the property of a religious institution such as taxpayer. These provisions permit the exemption of such property upon the filing of a written application to the Commissioners of the District of Columbia supported by an affidavit that such "additional grounds" are not held for profit or sale but only for the enlargement and expansion of the institution. There is a further provision that if at any future date the grounds thus exempted shall be sold at a profit the taxes for each year for which no tax has been paid shall become immediately due and payable, provided that the total taxes shall not exceed 50% of the net profit of the sale. 56 Stat. 1089 (1942), 47 D.C. Code § 801a(r) (2) (1951).

Different parts of Lot 806 were sold in 1958 and 1959 at a price which the taxing authorities claim resulted in a profit to taxpayer. The question we have, however, is not as to the amount of profit, if any, but whether taxpayer was entitled during the years 1944–1958, under other provisions of the Code, namely, 56 Stat. 1089 (1942), 47 D.C.Code § 801a(r) (1) (1951), to an unqualified exemption of Lot 806 as

"Grounds belonging to and reasonably required and actually used for the carrying on of the activities and purposes of any institution or organization entitled to exemption under the provisions of sections 47–801a to 47–801f,"

which include a religious institution such as taxpayer. In other words, in the present proceedings which arose after sale of Lot 806 taxpayer claimed no taxes were due for the years 1944–1958 because the lot was exempt without regard to the limitations of the "additional grounds" exemption specified in section 801a(r) (2).

■ The Tax Court agreed, finding on the basis of ample evidence that during the years 1944–1958 Lot 806 was "reasonably required and actually used for the carrying on" of the religious activities and purposes of taxpayer.[1] This finding is not disputed by the District of Columbia on its petition to us to review the decision of the Tax Court, except that the District contends the finding might have been otherwise had the claim to an unqualified exemption under section 1(r) (1) been made during the earlier years when applications for exemption were in fact made and allowed under the more limited provisions of section 1(r) (2). The District contends taxpayer is estopped to assert now, after sale of the lot, that it has been entitled to a complete exemption under section 1(r) (1). The Tax Court considered this contention to be inconsistent with Simpson Memorial Methodist Church v. District of Columbia, 91 U.S.App.D.C. 105, 199 F.2d 169,[2] and pointed out that what actually happened was that taxpayer asserted a basis for exemption less sweeping than it could have asserted in the factual situation which existed, and that this furnished the District no ground for invoking the doctrine of estoppel.

■ We agree with the Tax Court. The District has not shown such detriment as gives rise to an equitable right on its part to invoke successfully the bar of estoppel. In the end the contention is simply that the District somehow might have succeeded in defeating the complete exemption now asserted if it had been asserted in the years 1944–1958. Yet at a full hearing the District was unable to show that taxpayer was not entitled on the facts to a complete exemption during those years or to demonstrate any loss of evidence, due to the passage of time, which might have led to a contrary result. The doctrine of estoppel is an equitable one. It is invoked here on too tenuous a basis to cause the equities to be weighted in favor of the District and against taxpayer. The policy of the applicable statutes is to exempt property used for religious purposes, as Lot 806 was used, and the facts do not permit us to remove this case from the scope of that policy.[3]

Affirmed.

1. Specifically the Tax Court found that prior to 1950 approximately 60% of Lot 806 was reasonably required and actually used for the carrying on of the activities and purposes of the taxpayer, and that after 1950 the entire Lot 806 was so required and used.

2. In reversing the decision of the Tax Court in Simpson we remanded the case for initial consideration by the Tax Court of the question whether the land in dispute was entitled to a section 1(r) (1) or 1(r) (2) exemption, notwithstanding the Church had applied for and received a section 1(r) (2) exemption on the land some eight years prior to the controversy.

3. The District in its brief argues also that by relying upon the "additional grounds" exemption under section 1(r) (2) taxpayer waived the right it now asserts under section 1(r) (1). In the context of this case it seems to us that the question of waiver is essentially no different from that of estoppel. In any event there was no relinquishment of a right to complete exemption, and therefore no waiver. See Helvering v. Ethel D. Co., 63 App.D.C. 157, 159, 70 F.2d 761, 763. We do not construe the claim made by taxpayer in 1944–1958 as a relinquishment of a better claim to which it was later shown to be entitled.