Arthur A. MORRIS, Appellant,

v.

**WASHINGTON MEDICAL CENTER, INC.,**
a Virginia Corporation, et al., Appellees.

No. 8305.

District of Columbia Court of Appeals.

Argued Sept. 12, 1974.

Decided Jan. 16, 1975.

John P. Arness, Washington, D.C., with whom Christine O. Cook, Washington, D.C., was on the brief, for appellant.

George H. Clark, Washington, D.C., with whom William E. Constable and Michael B. McGovern, Washington, D.C., were on the brief, for appellees Washington Medical Center, Inc., and Deyerberg, and with whom Lawrence D. Huntsman, Washington, D.C., was on the brief, for appellee DWS Holdings, Inc. Benjamin R. Jacobs and Barry A. Zaslav, Washing-

ton, D.C., also entered appearances for DWS Holdings, Inc.

Before GALLAGHER and NEBEKER, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

On this appeal, which followed the dismissal of a complaint for injunctive relief and the denial of a motion for preliminary injunction, the sole issue of substance is whether a Virginia corporation, organized for the purpose of dealing in real estate, may, without stockholder approval, dispose of, by lease or sale, corporate property. The trial court ruled that when any such disposition of property is made in the usual and regular course of the corporation's business, stockholder approval is not required. We agree and affirm.

Appellant is a minority stockholder and a former Director and Treasurer of the Washington Medical Center, Inc. (WMC). WMC, one of the appellees herein, is a Virginia corporation whose declared purposes are:

(a) To engage in and carry on the business of buying, leasing, and otherwise acquiring real estate of every kind and description and wheresoever situated; buying, leasing and otherwise acquiring and constructing and erecting, or contracting for the construction and erection of buildings and structures in and on such real estate for any uses or purposes; holding, owning, improving, developing, maintaining, operating, leasing, mortgaging or disposing of such property or any part thereof; equipping, furnishing and operating medical buildings, medical centers, hospitals, office buildings, apartment houses, hotels, restaurants, drug stores, nurses homes, or any other buildings or structures of whatsoever kind;

. . . . . .

(d) In general, to carry on any other business or activities connected with or related or incidental to the foregoing purposes and to have and exercise all the powers now or hereafter conferred by the laws of the State of Virginia upon stock corporations formed under the provisions of the Code of Virginia.

Appellee Deyerberg is the President and Director of WMC.

### The Genesis of the Controversy

At the time of the acts complained of, WMC was the owner of land in Square 106 in the District of Columbia improved by the Doctors Hospital, two medical buildings, one business office building, and two apartment houses. Other property in the District of Columbia owned by WMC, at that time, was an office building at 1801 K Street, N.W.

By proxy solicitation letter of January 29, 1973, WMC stockholders were notified to attend a special meeting to consider and vote on two proposals—one concerned with the redevelopment of the property in Square 106 and the other with the acquisition of land in Square 86 for the construction of a new hospital and medical office building. With respect to the property in Square 106, the stockholders were informed that:

All of these buidings are obsolescent and it is not believed to be economically feasible to modernize them. This is particularly true in the case of Doctors Hospital.

Your Board of Directors determined that it is in the interest of the Corporation to demolish all of these structures and to replace them with new, modern buildings. The Board believes the most desirable way to accomplish this would be by leasing the ground to a developer on a long-term lease; have the developer arrange for the actual development and have your Corporation participate in the development to the extent possible as a limited partner.

Your Company owes approximately $10,500,000 on its properties in Square 106 and would expect to obtain a new First Deed of Trust Loan of approximately $13,000,000 with which to retire its present indebtedness on this property, retaining the excess proceeds for the purpose of acquiring title to alleys in the Square, one small additional piece of property and using any remaining proceeds for corporate purposes.

. . . . . .

Your Board carefully considered proposals from various developers and have now signed a contract for redevelopment with Mr. Oliver T. Carr, Jr., and Mr. A. James Clark. . . .

Our contract with these gentlemen is subject to your approval and is also subject to their being able to obtain the participation of an institutional investor, such as an insurance company or major bank. They are actively seeking such a participant and expect to have one in the very near future. It is entirely possible that some changes will be needed in the contract which we now have and its implementation will require the normal host of additional documents which are designed to clarify and protect the mutual commitments of all the parties. However, a copy of the current agreement is enclosed for your information.

Your officers and directors urgently recommend that you vote in favor of Proposal No. 1.

Outlined in the second proposal were plans for the acquisition of land in Square 86 and the construction thereon of a new Doctors Hospital and medical office building to accommodate physicians who practice in Doctors Hospital. Approval of Proposal No. 2 was also recommended and in this connection it was said:

Necessarily, we must at all times provide accommodations for our hospital patients and the doctors who occupy our medical

buildings. To that end, possession of Square 106 will be given to the developers in phases so that our doctor tenants will not be required to move until we will have space available for them in a new medical office building in Square 86, and the new hospital will be ready for occupancy in Square 86 before the developers will have rights to possession of the existing hospital site.

* * * * * *

Your Board believes, and is advised by counsel, that it has the power to consummate all of the above transactions without a vote of stockholders. However, these moves are of such great importance to your Company that we believed it desirable to submit them to you for action and accordingly have called this special meeting. (Management is voting for the two proposals.)

The agreement for the redevelopment of the property in Square 106 provided for a 99-year lease of such property to the Equitable Life Assurance Society of the United States (Equitable). At a special meeting of the stockholders on February 15, 1973, over 78% of the stock was voted in approval of the two proposals. It appears, however, that the proposed lease agreement submitted to the stockholders was never executed and that another lease with different provisions was negotiated between WMC and Equitable and was pending closing at the commencement of these proceedings.

Sometime thereafter, the directors of WMC determined that it would be in the best interest of the corporation to sell its 1801 K Street, N.W., office building. To this end the stockholders, on January 26, 1974, were by letter advised that, subject to their approval, WMC had agreed to sell the K Street property to appellee, DWS Holdings, Inc. (DWS) for $18,920,000. The stockholders were advised further that the sale when consummated would eliminate the need for an additional expenditure

of some $400,000 for maintenance and repairs during 1974 and that:

[t]he net proceeds from the sale (approximately $2,210,000.00) will substantially improve the company's credit and thereby enable progress toward . . . building of the new hospital and medical office building in Square 86. . . .

Forwarded with the letter was a proxy solicitation statement. At a special stockholders' meeting on February 22, 1974, more than two-thirds of the stock was voted in approval of the contract of sale and on March 28, 1974, the sale was consummated.

*The Commencement of Legal Proceedings*

On April 3, 1974, appellant, Harry Kaplan, and Louis D. Kaplan[1] complained against WMC and its President in the Civil Division of the Superior Court demanding injunctive relief in respect to the two transactions. The allegations of the complaint were that (1) the 99-year lease agreement with Equitable for the development of the property in Square 106 was made without stockholder approval as required by Section 13.1–77 of the Virginia

Code[2] and that (2) because of serious irregularities in obtaining stockholder approval of the sale of the K Street property, appellant was deprived of his statutory right to vote against the sale.[3] Appellant demanded judgment against WMC and appellee Deyerberg enjoining the consummation of the Equitable lease and the sale of the K Street property to DWS.[4] Appellant then moved on the basis of the complaint and its attachments and with supporting affidavits,[5] together with points and authorities, for a temporary restraining order and preliminary injunction. The appellees moved to dismiss, with prejudice, the amended complaint on the ground that it failed to state a claim upon which relief could be granted. In addition, appellees opposed the motion for a preliminary injunction urging that appellant had failed to make the showing required by A Quaker Action Group v. Hickel, 137 U.S.App.D.C. 176, 421 F.2d 1111 (1969), and Virginia Petroleum Jobbers Ass'n v. Federal Power Commission, 104 U.S.App.D.C. 106, 259 F. 2d 921 (1958).

The motion for a temporary restraining order was denied, and the cause was brought on for hearing on the motion for

1. The Kaplans were at the time of the complaint stockholders of WMC and on April 10, 1974, withdrew from the litigation.

2. The paragraph of Section 13.1–77 relied upon by appellant reads:
   A sale, lease or exchange, or a mortgage or pledge *for a consideration other than money*, of all, or substantially all, the property and assets, with or without the goodwill, of a corporation, if not made in the usual and regular course of its business, may be made upon such terms and conditions and for such consideration, which may consist in whole or in part of money or property, real or personal, including shares of any other corporation, domestic or foreign, as may be authorized in the following manner:
   (a) The board of directors shall adopt a resolution recommending such sale, lease, exchange, mortgage, pledge or other disposition and directing the submission thereof to a vote at a meeting of stockholders, which may be either an annual or a special meeting. (Emphasis added.)

3. WMC was alleged (1) to have sent out misleading, incomplete and inaccurate proxy material in respect to the reason for the sale and the requirement of stockholder approval and (2) to have refused to count proxy votes received after more than two-thirds of the stockholders had voted approval of the sale.

4. The complaint was amended by joining DWS as a defendant and developers Carr and James and Equitable as interested parties.

5. The affidavits were made by minority stockholders of WMC and, with one exception, pertained to the sale of the K Street property. The representations were that the stockholders were misled by an inaccurate and incomplete proxy solicitation. The affidavit of appellant was in substance that the lease with Equitable was revised and renegotiated without stockholder approval and that stockholder approval of the sale of 1801 K Street, N.W., was the product of material irregularities in the voting procedures.

preliminary injunction and the motion to dismiss the amended complaint.

At the commencement of the hearing, there was a colloquy between the court and counsel for the appellant which illuminates and brings into focus the narrow issue we will presently address. The court first identified the proceeding and expressed its view as to the nature of the injunctive relief which was being sought, saying:

> THE COURT: . . . Number one . . . to enjoin what was characterized as a lease. . . .
>
> Secondly, it was to set aside a sale . . . consummated on 1801—[6]
>
> [COUNSEL FOR APPELLANT]: That's not quite accurate, Your Honor. If I may characterize the suit it may aid in Your Honor's understanding. The suit has one objective only, that is, to obtain for the stockholders of Washington Medical Center, Inc., their right to consider and vote on these transactions in accordance with the rights afforded them as stockholders pursuant to the laws of the State of Virginia. . . .
>
> That is the sole and only issue in this case: it is whether these stockholders . . . have been deprived of their right to vote.
>
> .　.　.　.　.　.
>
> THE COURT: Well . . when I finish . . . this hearing, do you or do you not want me to sign an order that . . . the defendant, herein, shall be enjoined from entering into a lease . . . and two, that . . . the Court sets aside a sale of property [1801 K Street, N.W.] . . . as invalid and void. . . .
>
> [COUNSEL FOR APPELLANT]: At this junction, we ask only that Your Honor declare that there shall be a valid vote taken. . . .

Upon consideration of the complaint, the motion for preliminary injunction, the exhibits, and points and authorities in support of the motion, the court treated appellees' motion to dismiss as a motion for summary judgment as permitted by Superior Court Civil Rule 12(b), specifically crediting the affidavits and the testimony proffered by appellant.[7] The court observed that there was no allegation of fraud as to either transaction, or that DWS was other than a good faith purchaser for value. The court then ruled as a matter of law that the two transactions, *viz.*, the lease of the property in Square 106 and the sale of the property at 1801 K Street, N.W., were in the usual and regular course of the business of WMC. Determining that there existed no genuine issue of material fact, the court then entered, pursuant to Superior Court Civil Rule 56, a judgment dismissing the complaint for injunctive relief, thus effectively disposing of the motion for a preliminary injunction. This appeal and the motions for summary reversal and affirmance followed.

### The Disposition of the Issue Respecting Appellant's Voting Rights as a WMC Stockholder

WMC is a creature of Virginia law (Va.Code Ann.1950) and the rights of its stockholders are controlled by that law and pertinent provisions of the Corporate Charter.[8] So it is also with the manage-

---

6. It was represented to the court that the sale of 1801 K Street, N.W., was consummated March 28, 1974, and that the lease agreement was consummated sometime thereafter.

7. The proffered testimony concerning the property at 1801 K Street, N.W., was that there were misleading representations as to the value of the property and that there were irregularities in the voting procedures which resulted in stockholder approval.

With respect to the property in Square 106, the proffered testimony was that, without stockholder approval, the management of WMC renegotiated a 99-year lease with provisions much less favorable to the stockholders than the lease approved at the stockholders' meeting of February 15, 1973.

8. The purposes for which WMC was organized are spelled out in great detail in the Articles of Incorporation and are not in dispute.

ment of WMC. Thus, by Section 13.1–35 of the Virginia Code, it is provided:

> Board of directors generally.—The business and affairs of a corporation shall be managed by a board of directors subject to any requirement of stockholder action made by this Act or the articles of incorporation. . . . (1956, c. 428.)

With specific reference to the powers of a corporation organized for the purpose of dealing in real estate, it is provided:

### Article 6.

#### Disposition of Assets

§ 13.1–77. Sale, mortgage or other disposition of assets.—The sale, lease, exchange, mortgage, pledge or other disposition of all, or substantially all, the property and assets of a corporation, when made in the usual and regular course of the business of the corporation, may be made upon such terms and conditions and for such consideration, which may consist in whole or in part of money or property, real or personal, including shares of any other corporation, domestic or foreign, as shall be authorized by its board of directors; *and in such case no authorization or consent of the stockholders shall be required.* (Emphasis added.)

■ That the two transactions, brought into question by appellant, were in the usual and regular course of the business of WMC seems almost too clear for discussion. The lease of the property in Square 106 for purposes of redevelopment and the sale of the K Street property were calculated to accomplish one of the very purposes for which WMC exists, *i. e.,* " . . . furnishing and operating medical buildings . . . hospitals, office buildings . . . ." Certainly it cannot be seriously contended that the lease and sale deprived WMC of the means of accomplishing those purposes. *See* Logie v. Mother Lode Copper Mines Co. of Alaska, 106 Wash. 208, 179 P. 835, 837–838 (1919). *See also* Annot., 9 A.L. R.2d 1306, 1309. We hold therefore, as did the trial court, that stockholder approval was not required as a condition precedent to the consummation of the lease of the property in Square 106 to Equitable[9] and the sale of the property at 1801 K Street, N.W., to DWS.

■ Appellant says, however, that having sought and obtained stockholder approval of the two transactions it cannot be said, when the transactions are brought into question, that such approval was not required. The short answer to this is that appellant has made no showing that he was misled into changing his position in respect to the statutory authority of management or that he was in any way prejudiced by the proxy solicitations for stockholder approval of the two transactions. *See and compare* Ferguson v. Quaker City Life Insurance Co., D.C.Mun.App., 129 A.2d 189, 192 (1957); District of Columbia v. Chevrah Tifereth Israel, 108 U.S.App.D.C. 53, 280 F.2d 61 (1960); Parker v. Sager, 85 U.S.App.D.C. 4, 8, 174 F.2d 657, 661 (1949); Thompson v. Park Sav. Bank, 68 App.D.C. 272, 277, 96 F.2d 544, 549, cert. denied, 305 U.S. 606, 59 S.Ct. 82, 83 L.Ed. 385 (1938).

■ Appellant's reliance upon the third paragraph of Virginia Code Section 13.1–77[10] is misplaced. In the first place, there

---

They are to " . . . carry on the business of buying, leasing, and otherwise acquiring real estate . . . holding, owning, improving, developing of such property . . . equipping, furnishing and operating medical buildings . . . hospitals . . . or any other buildings or structures. . . . "

9. By the proxy solicitation letter of January 29, 1973, the stockholders were informed that,

"It is entirely possible that some changes will be needed in the contract which we now have and its implementation will require the normal host of additional documents which are designed to clarify and protect the mutual commitments of the parties. However, a copy of the current agreement is enclosed for your information."

10. See n. 2 *supra.*

**138**

is not even pretense that either of the transactions involved was "a mortgage or pledge" or if so that it was for ". . . a consideration other than money". Moreover it is clear from this record that the controversy concerns the lease of the property in Square 106 and the sale of the property at 1801 K. Street, N.W., and, as we have pointed out, both transactions were in the usual and regular course of the business of WMC.

The conclusion of all this is that appellant failed utterly at the hearing to establish any violation of his voting rights, and has failed here to establish any abuse of discretion in denying his motion for a preliminary injunction. *See* Jones v. District of Columbia Redevelopment Land Agency, 162 U.S.App.D.C. 19, 495 F.2d 1075 (1974); Maryland National Capital Park & Planning Commission v. U. S. Postal Service, 159 U.S.App.D.C. 158, 487 F.2d 1029 (1973); A Quaker Action Group v. Hickel, *supra*; Virginia Petroleum Jobbers Ass'n v. Federal Power Commission, *supra*.

Affirmed.

GALLAGHER, J., concurs in the result.